Decided October 22, 1985

1

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

OFFICE OF THE ATTORNEY GENERAL )    CIVIL ACTION NO. 85-428
and THE OFFICE OF IMMIGRATION )
AND NATURALIZATION OF THE )
COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS, )
)
        Petitioners, )
)
    vs. )    MEMORANDUM OPINION
)
PERPETUA VILLEGAS ARRIOLA, )
)
        Respondent. )
_____ )

This is an action filed by the Office of the Attorney
General seeking the deportation of respondent, Perpetua Villegas
Arriola. The action was filed pursuant to Public Law 3-105, also
referred to as the Commonwealth Entry and Deportation Act of
1983.[1] The petition cited, as basis for deportation, a violation
of Section 17(e) of the Act.[2] Specifically, the Commonwealth
alleged that respondent's non-immigrant entry permit which was
issued to respondent by the Commonwealth on March 8, 1983,

_____

[1] This Act became effective May 13, 1984. See section 31 of
Public Law 3-105.

[2] That subsection provides as a ground for deportation an
alien's failure to comply with the requirements or conditions of
his entry.

3

expired March 8, 1984 without any renewal or extension being given by the Commonwealth.[3] Further, the Commonwealth alleged that respondent's status as an immediate relative of a Commonwealth citizen ceased when respondent's husband passed away August 13, 1984.

At the hearing on this matter held September 25, 1985, the respondent argued that she is a lawful permanent resident of the Commonwealth by virtue of her being granted that status pursuant to law and as evidenced by her being issued an official certification by the CNMI Immigration and Naturalization Office (INO) that she was admitted "as a lawful permanent resident of the Northern Mariana Islands on July 3, 1977." She further argued that the death of her husband did not operate to divest her of her status as a lawful permanent resident because she acquired that status pursuant to operation of law.[4]

Part 11.8(b)(1) of the previously existing INO Regulations, as amended, provided for issuance of permanent resident entry permits by the Chief of Immigration pursuant to the authority granted under 53 TTC §53(2) and Public Law 1-8 to an alien who (1) has lawfully entered and is residing in the Commonwealth and (2) who is a spouse or a legal unmarried child (under the age

_____

[3] The non-immigrant entry permit was issued respondent under the classification of "immediate relative" due to her marriage to a Commonwealth citizen. The permit was issued pursuant to INO Regulation Part 11.8(b).

[4] See Part 11.8(b) of the INO Regulations, as amended, published Vol. 4, No. 3, Commonwealth Register, July 15, 1982, at pp. 1534-1535.

4

of 18) of a Trust Territory citizen, who had been lawfully domiciled in the Commonwealth for at least five (5) years prior to the submission of a petition and application for permanent residence. The Commonwealth, at the hearing, questioned both the INO's previous actions in issuing the so-called "permanent residency white-cards" as well as the legal basis for promulgation of Part 11.8(b), as amended, of the INO Regulations which provided for permanent residence status. It argued that the only statutory source for the granting of permanent residency status is that provided by Public Law 5-11, which has since been repealed.[5] The Commonwealth noted during argument that respondent further did not qualify under the law for permanent residency status pursuant to such statute because she failed to meet the five-year residency requirement even had she applied for permanent residency status, by the time such statute was repealed.[6]

The relevant facts of this case, as noted to the court at the hearing September 25, 1985 and at the post-hearing conference October 3, 1985, are not complicated. Respondent, a Philippine citizen, first entered the Northern Mariana Islands, on or about

_____

[5] Public Law 5-11 was effective from April 1, 1977 until April 23, 1981. It permitted the then Resident Commissioner (and subsequently the Governor) to grant permanent residency status to non-Trust Territory citizens who are of good moral character and have been actual residents of the Northern Mariana Islands for at least five (5) years immediately prior to application for permanent residency status.

[6] Public Law 2-17 repealed Public Law 5-11, effective April 23, 1981. See 3 CMC §4201 and Commission Comment thereto.

5

December 4, 1975, as a dependent spouse of her first husband, a Filipino non-resident worker. Subsequently, her first husband died in the Commonwealth on January 8, 1977 and respondent immediately thereafter accompanied her husband's remains to the Philippines. On July 3, 1977, respondent re-entered Saipan using the entry permit previously issued her as a dependent of her non-resident worker husband. On March 30, 1978, respondent remarried to a Luis S. Arriola, a citizen of the Commonwealth, and her status was changed to that of immediate relative on April 19, 1978. After her marriage to Mr. Arriola, respondent brought to Saipan her four (4) children from her previous marriage and these children were adopted by Arriola. On January 30, 1984 the INO issued respondent a CNMI permanent resident card pursuant to Part 11.8(b) of the INO Regulations. Respondent's husband, Luis S. Arriola, subsequently passed away August 13, 1984. On September 12, 1985, this action for deportation was filed.

As a preliminary matter, the court notes that all immigration matters pertaining to the Commonwealth of the Northern Marianas are under the jurisdiction of the Commonwealth Government, not federal. Northern Marianas Covenant (U.S. Public Law 94-241), Section 503(a). Further, prior to enactment of local Public Law 3-105, matters pertaining to immigration control with respect to the Commonwealth were governed by Chapter 2 of Title 53 of the Trust Territory Code,[7] subsequently codified

---

[7] See Trust Territory Code, Vol. 2 (1980 Ed.)

by the Commonwealth in 3 CMC §§4301-4309.  After May 13, 1984, Chapter 2 of Title 53 of the Trust Territory Code was repealed and the statutory provisions of Public Law 3-105 became operative.[8]

On February 23, 1981, the Governor of the Commonwealth, pursuant to his authority under Title 53 of the Trust Territory Code, promulgated a fairly comprehensive set of immigration regulations.[9]  Part 11.8(b) of these regulations initially provided for issuance of resident entry permits to "immediate relatives" defined to mean spouse, parents, or children under 21 years of age.[10]  On July 15, 1982, Part 11.8 was amended so that, inter alia, instead of the designation "resident entry permit", the permits provided for issuance of "permanent resident entry permit."[11]  The amendments made to Part 11.8 appears directly related to the fact that Public Law 5-11 (the statutory basis for the granting of permanent residency status) was repealed April 23, 1981, about three (3) months after the original

---

8/
See section 29, Public Law 3-105.
9/
See Commonwealth Register, Vol. 3, No. 1, dated February 23, 1981, pp. 1002-1041.  These regulations and their subsequent amendments were repealed pursuant to section 29 of Public Law 3-105.
10/
Although apparently intended to apply to immediate relatives of CNMI citizens, this is not clear from the language of Part 11.8(b) of said regulations.
11/
This amendment appears as adopted in Commonwealth Register, Vol. 4, No. 3, dated July 15, 1982, pp. 1532-1535.

regulations were issued. Rather than citing Public Law 5-11 as one of the legal basis for the amendments to Part 11.8 (which was the case when the original regulations were adopted), the amendments made to Part 11.8 on July 15, 1982 relied solely on the general authority of 53 TTC §53(2) and Public Law 1-8.

The threshold issue which must be initially addressed is whether the immigration regulations adopted by the Governor of the Commonwealth on February 23, 1981 were validly promulgated. The court finds that the regulations were promulgated in accordance with the statutory authority found in 53 TTC §54 and, therefore, valid. The governor, as chief executive of the Commonwealth, was within his powers to promulgate rules and regulations pertaining to Commonwealth immigration matters.

One of the provisions of these regulations delegated to the Chief of Immigration the authority to further promulgate and/or amend rules and regulations pertaining to nationality, emigration, and immigration. See Part 10.4 of the INO Regulations, Commonwealth Register, Vol. 3, No. 1, dated February 12, 1981. Pursuant to such delegation of authority, the Chief of Immigration thus amended Part 11.8 of the INO Regulations on July 15, 1982, so that with the repeal of Public Law 5-11, permanent residency status could still be accorded "to a spouse or a legal unmarried child under the age of 18 of a citizen of the Trust Territory of the Pacific Islands," if such citizen has been domiciled in the Commonwealth at least five (5) years immediately prior to the submission of the petition and application for permanent residence. A permanent resident entry

**8**

permit, however, becomes null and void automatically upon termination of permittee's qualifying status and, for good cause shown, may be revoked. See Part 11.8(b)(1), (2) and (3) of the said INO Regulations, as amended.

The court, however, finds that the delegation of authority by the Governor to the Chief of Immigration was invalid. No where in 53 TTC §§54 and 59, or elsewhere, is there to be found a statutory basis for the delegation of authority to the Chief of Immigration with respect to promulgation of amendments to or the issuance of new immigration regulations.[12] To the contrary, both of these statutory sections speak of "regulations promulgated by the High Commissioner," i.e., by the governor as chief executive.

Therefore, to the extent that the July 15, 1982 amendments to Part 11.8(a) and (b) were made pursuant to an unlawful delegation of authority, such amendments were invalid and were of no force and effect. Thus, absent such amendments, the text of the original regulations issued February 21, 1981 stood effective until May 13, 1984, when repealed by Public Law 3-105.

The next issue involves squaring Part 11.8(b) of the original INO regulations, issued February 21, 1981, with Public Law 5-11, i.e., whether Public Law 5-11 precluded promulgation of Part 11.8(b) of the original INO Regulations. A reading of Public Law 5-11 shows that, by legislative pronouncement, permanent residency status may be granted by the Resident

_____
12/
Such sections were cited in Part 10.4 of the INO Regulations as the basis for the governor's delegation of rule-making authority regarding immigration matters.

9

Commissioner (or the Governor subsequently) to persons who meet three specific conditions.[13] And it is only to those persons who meet such conditions that permanent residency status could be granted by the chief executive. To the extent that Part 11.8(b) of the INO Regulations issued February 21, 1981, purported to create a limitation to the specified statutory conditions, such regulations were inconsistent with Public Law 5-11 and must fall.[14] Therefore, the court finds that only Public Law 5-11 was the sole basis for acquisition of permanent residency status. Failing to qualify for permanent residency status under Public Law 5-11, respondent's immediate relative status does not accord her the status of permanent resident.[15] Respondent would have eventually qualified for permanent residence had not Public Law 5-11 been repealed. Unfortunately, the legislature, in repealing Public Law 5-11, failed to address or provide for the

---

[13]
See section 1 of Public Law 5-11.

[14]
Part 11.8(b) purports to limit resident entry permits to those persons having immediate relative status or to those eligible under section 506(c) of the Covenant. Such is inconsistent with the three (3) statutory criteria established by Public Law 5-11. Rules and regulations authorized by said statute must not be inconsistent. See section 5 of Public Law 5-11.

[15]
The respondent failed to apply for permanent resident status pursuant to Public Law 5-11. Had she applied prior to its repeal (i.e., by April 23, 1981), respondent would still not have met the five (5) year residency requirement prior to submission of an application for permanent residency status because she re-entered the Commonwealth on July 3, 1977, after an absence of about six (6) months from the Commonwealth. Such absence broke the continuity of her first entry in 1975 for purposes of the requirement of section 1(3) of Public Law 5-11. Thus, as of the repeal of the statute on April 23, 1981, respondent was short by about one year and four months.

potentially harsh consequences that would befall persons in respondent's situation, as a result of the repeal.

The court now turns to the primary issue of this case, i.e. whether the death of respondent's Commonwealth citizen husband operated to terminate her immediate relative status and is thus subject to deportation. In view of its findings that (1) there is, in effect, no permanent residency statute as of April 23, 1981 and (2) the regulations purporting to create and establish a permanent residency regulatory mechanism are invalid, the court finds that the legal basis for respondent's ability to reside in the Commonwealth stems solely from the non-immigrant entry permit issued the respondent annually by virtue of her immediate relative status, i.e., as the spouse of a Commonwealth citizen. Since the entry permit expired without renewal and since respondent's husband has died, the question is whether she, as a surviving spouse, retains her status as an immediate relative, and if so, whether she is entitled to a renewal of her non-immigrant entry permit by virtue of such status.

While the court finds that respondent is not a permanent resident of the Commonwealth as that term is defined by law, the court disagrees with the Commonwealth's position that respondent, by virtue of her second husband's death, ceased being an immediate relative of the deceased second husband. "Immediate relative" is defined by statute as meaning spouses, parents, and children under the age of 21. Public Law 3-105, §3(m). And they enter the Commonwealth as non-immigrants. Id., §3(q)(9). When their husband dies, however, they do not cease being spouses of

**11**

that husband. They become surviving spouses, or widows, of the deceased. Unlike a divorce which terminates the marital relationship completely, the death of a spouse does not operate to terminate a surviving spouse's relationship to the deceased. She continues to be the spouse of the deceased, albeit a surviving spouse or widow. The fact that she outlived her husband does not operate to terminate her relationship as an immediate relative. To conclude otherwise, as the Commonwealth contends, would be tantamount to equating a spouse's death to the effect produced by a divorce. A divorced person ceases being the spouse of the other; a widow remains the spouse of a deceased, and entitles her to certain rights as may be provided by law. See generally 40A Words and Phrases, pp. 565-567; Rosell v State Industrial Accident Commission, 95 P.2d 726, 729. Respondent, therefore, continues to be an immediate relative of the deceased, as defined by Public Law 3-105.

Having so found, the court now addresses the question as to whether respondent is entitled to have her non-immigrant entry permit as an immediate relative renewed. Subsequent to her marriage to Luis S. Arriola, the INO had annually renewed respondent's non-immigrant entry permit as an immediate relative. Her failure to renew the said permit before its last expiration March 8, 1984 resulted from her reliance on the INO that she no longer had to apply for and renew such permit by virtue of her being issued the so-called "permanent residency white card" on January 30, 1984. But for that misplaced reliance, her entry permit would have been renewed annually since.

**12**

The court is cognizant that the law provides several grounds for deportation of aliens. Public Law 3-105, §17. Except for the allegation that the respondent failed to comply with the requirement or conditions of her entry (which the court has found to be due to the fault of the Commonwealth), the other grounds have no bearing on respondent. The new INO regulations promulgated pursuant to Public Law 3-105 provides for issuance and renewal of entry permits to immediate relatives of persons who are not aliens, for durations of one year "so long as the immediate relative status is in effect."[16] Such provision, while not equivalent to a change of status to that of permanent residence, does permit respondent to reside in the Commonwealth with her immediate family, including her children who were adopted by her deceased second husband.[17]

---

16/
INO Regulations, Section 706(D), Commonwealth Register, Vol. 7, No. 7, July 22, 1985 at 3787.

17/
In the absence of any permanent residency statute (or regulations) in the Commonwealth, even the spouses and children of Commonwealth citizens who are still living are non-immigrant aliens whose duration of stay here, although indefinite, is temporary. Unlike federal immigration statutes which allows an alien spouse and children to become U.S. permanent resident aliens based on their immediate relative status (upon marriage to a U.S. citizen), such is not the case in the Commonwealth. Thus, where one's spouse unexpectedly dies, regardless of the number of years the alien spouse has resided in the Commonwealth she would have to pack up and leave, as the Commonwealth's argument in this case goes. Such disruption of family life and ties is unwarranted, and the existing law, at the very least, fortunately (as far as this court interprets it) permits for continued residence, so long as that person does not violate any of the grounds for deportation.

The court, therefore, concludes as a matter of law that:

[res]pondent is not a permanent resident of the Commonwealth.

2. Respondent, after the death of her second husband, remains an immediate relative of the deceased for purposes of Public Law 3-105 and the regulations promulgated thereunder.

3. The failure of respondent to timely renew her non-immigrant entry permit (immediate relative class) was due to the fault of the Immigration and Naturalization Office, and, therefore, entitles her to have her said permit renewed.

4. The respondent is not subject to deportation, in the absence of violation of any of the grounds for deportation specified in Public Law 3-105.

An appropriate order denying deportation of respondent shall forthwith issue.

Dated at Saipan, CM, this 22nd day of October, 1985.

_____

Jose S. Dela Cruz, Associate Judge

**14**